[No. 1666-2.   Division Two.   May 3, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH HARTNELL, *Appellant*.

*Fred D. Gentry* (of *Bean, Gentry & Rathbone*), for appellant.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Ed Schaller, Deputy,* for respondent.

REED, J.—Kenneth Hartnell appeals from a jury conviction of two counts of the crime of unlawful delivery of a controlled substance (heroin).

On the basis of previous conversations, Drug Agent Albert Vincent went to the home of Tony Asencio on October 4, 1973, where he bought $100 worth of methamphetamines from Asencio. Vincent also asked for some heroin, gave $400 to Asencio, and overheard Asencio tell his wife he was "going to Ken's place." Asencio was followed in his car by police surveillance units to the Kenneth Hartnell residence, where he remained about 30 minutes. On his way back, Asencio stopped briefly at a grocery store and came out with a paper bag. He arrived home just after midnight on October 5 and had with him a paper bag containing cigarettes and soft drinks. Asencio also had a quantity of heroin in exchange for Vincent's $400. Vincent departed, saying he would be back for more.

At about 8 p.m. on October 17, 1973, Agent Vincent returned to the Asencio home with previously photocopied

money and bought $750 worth of what was purported to be opium on the condition that Asencio "trip" or go get some heroin. Asencio took $150 more and told his wife he was "going to Ken's to cop."[1] Asencio was again followed by police to Hartnell's house, then to a service station and a different grocery store for brief stops on the return trip. When he arrived home, he brought cigarettes, soft drinks, and beer. He also delivered a paper folder containing heroin to Vincent and stated it had come from Ken Hartnell. Asencio was arrested on October 17 and $680 in recorded bills was found on his person.

Later that night the police went to the Hartnell residence. Detective Jim Flint, dressed in plain clothes, was armed with a warrant to search the premises and the person of Ken Hartnell. Mrs. Hartnell came to the back door in answer to the officer's knock; without identifying himself, he asked her if Ken was in.

> She said he was in bed. I said, "Well, I would like to talk to him." She says, "Well, I will see if he wants to get up." I says, "May I come in? She said, "Come on in." I walked in. I believe that door actually goes into the kitchen more than it does the storage room. I went inside the door. Mr. Hartnell came out of the back bedroom with his wife, and I advised him who I was and that he was under arrest [for unlawful delivery of heroin].

A search of Hartnell incident to the arrest and before the warrant was read, yielded $200 of the prerecorded money in his pants pocket.

The assignments of error raise the following issues: (1) Was the evidence sufficient to support a conviction on count 1, the October 5 drug sale? (2) Did the court err in failing to grant defendant's motion to sever the counts for trial? (3) Should the money taken from Hartnell at the time of his arrest have been suppressed because probable cause was lacking both for issuance of the search warrant and for the warrantless arrest, and because the officer's mode of household entry was illegal? (4) Did the court improperly

---

[1]In the vernacular of the drug trade, Mrs. Asencio testified, "cop" means to "score dope, buy it."

allow Agent Vincent and Mrs. Asencio to relate Tony Asencio's alleged statements set out above as to where he was going and where he had been to get the heroin? (5) Should the court have given defendant's proposed instruction directing the jury to receive an accomplice's testimony with caution? We find no prejudicial error and affirm the conviction.

1. In urging the insufficiency of the evidence, Hartnell points out that he was not shown to have been at home when Asencio visited there on October 5, and that Asencio could have procured the heroin from any of: his car, his pocket, someone in the grocery store, or someone else inside the Hartnell residence. However, the State produced evidence showing, *inter alia*, that Asencio had methamphetamines for sale but no heroin on hand; that he was followed to Ken Hartnell's house; that his was evidently the only car there except Hartnell's; that the stop at the store was apparently for soft drinks and cigarettes; that Asencio was able to deliver the heroin only after a stop at Hartnell's that would have been unnecessary if Asencio had the heroin all along or obtained it at the store.

The prosecution's evidence, albeit circumstantial, was ample to overcome the motion to dismiss and support the jury's determination that Asencio purchased the heroin from defendant at the Hartnell residence. *State v. Braxton*, 10 Wn. App. 1, 516 P.2d 771 (1973).

2. In support of his argument concerning the motion to sever counts for trial, defendant argues that the State had the stronger case in count 2 because of the money taken from his pocket at the time of arrest; this, he says, tainted the jury's determination in count 1.

Discretion to join these offenses in a single charge is conferred by CrR 4.3(a). A motion for severance is sanctioned by CrR 4.4(a)(1), which provides as follows:

(1) A defendant's motion for severance of offenses or defendants must be made before trial, except that a motion for severance may be made before or at the close of all the evidence if the interests of justice require. Sever-

ance is waived if the motion is not made at the appropriate time.

However, in this case the defendant did not renew the motion at the close of all the evidence, and it must be deemed waived by virtue of CrR 4.4(a)(2):

> (2) If a defendant's pretrial motion for severance was overruled he may renew the motion on the same ground before or at the close of all the evidence. Severance is waived by failure to renew the motion.

Moreover, even had the motion been timely renewed and granted, evidence of the October 17 transaction would have been admissible in a trial on count 1 to show a common scheme or plan and identity of the drug dealer. *State v. Kinsey*, 7 Wn. App. 773, 502 P.2d 470 (1972).

■ 3. We turn next to a consideration of the issuance and execution of the search warrant and the propriety of the arrest. The warrant is said to be unsupported by probable cause for believing controlled substances were at Hartnell's house. However, Detective Flint's complaint for warrant, which we have substantially set forth as an appendix to this opinion, recites in full the details of Agent Vincent's two purchases of heroin from Asencio, including payment of the prerecorded money, Asencio's statement that he had to "trip" to get the heroin, the police surveillance of the Hartnell residence and following Asencio there and back, and the recovery of only part of the money from Asencio upon his arrest; the complaint further relates Vincent's past reliability as an informant. We are convinced the complaint supplied a "substantial basis" for the warrant, *i.e.*, "rational grounds to believe that criminal activity or evidence in proof of it existed at the premises [on the person] to be searched, . . ." *State v. Patterson*, 83 Wn.2d 49, 61, 515 P.2d 496 (1973); *see State v. Harris*, 12 Wn. App. 481, 530 P.2d 646 (1975).

■ Defendant challenges his warrantless arrest on the similar basis that the record is devoid of any indication the detective knew or had probable cause to believe he was at

home during Asencio's two visits and feloniously delivered the drugs in person. The rule is that

> [p]robable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been or is being committed.

*State v. Gluck*, 83 Wn.2d 424, 426, 518 P.2d 703 (1974). Probable cause may be based on the totality of known suspicious circumstances which need not at the time of arrest be sufficient to prove the suspect's guilt beyond a reasonable doubt. *State v. Parker*, 79 Wn.2d 326, 485 P.2d 60 (1971); *State v. Mannhalt*, 1 Wn. App. 598, 462 P.2d 970 (1969).

It is true that Asencio *could* have purchased the drugs from someone else at Hartnell's house or *could* even have had the heroin in his car. But we believe the facts known to Detective Flint at the time of arrest, as disclosed in his complaint, were adequate to constitute probable cause to believe that Ken Hartnell had been the source of the heroin.

We hold the search valid on other grounds as well. If we assume, for the sake of argument, that the complaint for the warrant established probable cause to search Ken Hartnell and his premises but did not justify an arrest without a warrant, we are nevertheless impelled to approve the admissibility of the money from Hartnell's pocket. This is because the officer could have first executed the search warrant upon probable cause, located the money in defendant's pocket, and *then* placed him under arrest.[2] Surely the

---

[2]No explanation appears in the record as to why the policeman did not follow this more orthodox search and arrest sequence. However, it is possible to conclude from the testimony at the suppression hearing that Detective Flint did inform Hartnell he possessed a warrant prior to the search:

Q You placed him under arrest; when did you show him the search warrant?

A Right after I arrested him, making sure he didn't have any gun on him.

physical detention of Hartnell for a search incident to his arrest restricted his liberty no more than would have a search authorized by warrant. Furthermore, we are convinced Detective Flint demonstrated probable cause to arrest Hartnell for the separate felony of possession of heroin[3] at the residence over which he had dominion and control. *State v. Chakos*, 74 Wn.2d 154, 443 P.2d 815 (1968); *State v. Weiss*, 73 Wn.2d 372, 438 P.2d 610 (1968); *State v. Wheatley*, 10 Wn. App. 777, 519 P.2d 1001 (1974). Inasmuch as defendant could have been lawfully arrested without a warrant for *possession* of the narcotic, a search incident to arrest for another felony of unlawful delivery of heroin was permissible even if we assume the announced basis for arrest was then ill founded. On this point, we are persuaded by the reasoning in *State v. Zito*, 54 N.J. 206, 254 A.2d 769 (1969), where the court stated at pages 212-13:

> The question then is whether it should matter that the arresting officer selected one of the known bases of arrest rather than another, and that, hypothetically for our immediate discussion, the basis selected is later adjudged to be inadequate. . . . It would be a windfall to the criminal, and serve no laudable end, to suppress evidence of his guilt upon the fortuitous ground that the arresting officer, who knew of several bases for the arrest, selected one a judge later found inadequate.

*Accord, United States v. Rickus*, 351 F. Supp. 1379 (E.D. Pa. 1972), *aff'd*, 480 F.2d 919 (3d Cir. 1973), *cert. denied*, 414 U.S. 1006, 38 L. Ed. 2d 243, 94 S. Ct. 365 (1973); *see State v. Cloman*, 254 Ore. 1, 456 P.2d 67 (1969); *State v. Somfleth*, 8 Ore. App. 171, 492 P.2d 808 (1972).

---

Q Okay. Was he wearing pants at that time?

A I believe he was.

Q And it was at that time that you took the money from his left rear pocket?

A I advised him he was under arrest, identified myself and advised him he was under arrest, advised him I had a search warrant, and I believe I walked him into the living room and went through his pockets.

Q When did you read the search warrant to him?

A After he was searched and the money was picked up.

[3] RCW 69.50.401(c).

The defendant further argues that the officer's entry without identification and announcement of his purpose to Mrs. Hartnell constituted a violation of the "knock and announce" rule of RCW 10.31.040, the fourth amendment to the United States Constitution, and article 1, section 7 of the Washington Constitution. A police entry in violation of the rule, absent exigent circumstances such as the need to prevent destruction of evidence, will require the suppression of any evidence obtained thereby. *Coleman v. Reilly*, 8 Wn. App. 684, 508 P.2d 1035 (1973).

RCW 10.31.040 states as follows:

> Officer may break and enter. To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance.

The word "break" in the statute has been interpreted to include an entry "without permission." *State v. Miller*, 7 Wn. App. 414, 419, 499 P.2d 241 (1972).

The purposes underlying the "knock and announce" rule were recently stated by the Ninth Circuit Court of Appeals:

> (1) It decreases the potential for violence. Particularly, the rule of announcement safeguards "officers, who might be mistaken, upon an unannounced intrusion into a home, for someone with no right to be there  *  *  *."
>
> (2) It prevents the physical destruction of property.
>
> (3) It protects the individual's right of privacy.

(Citations omitted.) *United States v. Phillips*, 497 F.2d 1131, 1133 (9th Cir. 1974); *accord, State v. Huckaby*, 15 Wn. App. 280, 549 P.2d 35 (1976).

In this case, when we consider the evidence in a light most favorable to the State, we are satisfied the detective's entry was expressly consented to by the defendant's wife. When consent was given, the dangers of potential violence and property damage were dissipated; it is apparent, also, that the defendant's wife chose not to exercise her right of privacy when she invited the stranger into the house upon

request. A consensual entry is not a "breaking open" entrance such as to require notice of authority and purpose under the statute or the applicable constitutional provisions. *See United States v. Salgado*, 347 F.2d 216 (2d Cir. 1965).

4. Hartnell's next assignment of error involves testimony of Agent Vincent that, on October 5, he heard Tony Asencio tell his wife he was "going to Ken's place" and on October 17, Asencio said he was getting the heroin "from a Ken Hartnell." Further, Monica Asencio was permitted to testify that her husband told her on October 5 he was "going to Hartnell's," and on October 17 he was "going to Ken's to cop." The defendant argues that the court erred in admitting this testimony as part of the res gestae. We agree the statements do not satisfy the res gestae exception to the rule against hearsay discussed in *Beck v. Dye*, 200 Wash. 1, 92 P.2d 1113, 127 A.L.R. 1022 (1939).

The res gestae[4] rule, most often synonymous with the "excited utterances" exception to the inadmissibility of hearsay, in part requires

> a spontaneous or instinctive utterance of thought, . . . not the product of premeditation, reflection, or design; . . . made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, . . .

*Beck v. Dye, supra* at 9-10. Here the statements are lacking in the requisite of spontaneity and are not within the exception.

Having thus concluded, however, we do not believe the admission of the statements was prejudicial error. In reviewing the entire record, we are convinced the admis-

---

[4]The term "res gestae" has been criticized by scholars for, among other reasons, being an imprecise substitute for common exceptions to the hearsay rule: (1) declarations of present bodily conditions, (2) declarations of present mental states and emotions, (3) excited utterances, and (4) declarations of present sense impressions. *See* E. Cleary, *McCormick's Handbook of the Law of Evidence* § 288 (2d ed. 1972); 6 J. Wigmore, *Evidence* §§ 1767-68 (3d ed. 1940). The phrase yet lives in Washington, however. *E.g., State v. Smith*, 85 Wn.2d 840, 540 P.2d 424 (1975).

sion of these statements did not affect the outcome of the trial. *State v. Martin*, 73 Wn.2d 616, 440 P.2d 429 (1968). From their own surveillance of Asencio's car and Hartnell's house, the police knew, and the jury was told, quite independently where Asencio had gone on each occasion immediately after Vincent gave him money. Also, the prerecorded money was found on Hartnell's person. These separate facts obviate any conclusion that the statements affected the outcome of the trial. Their admission was harmless error.

5. Finally, defendant assigns error to the court's failure to give the following proposed instruction concerning the statements attributed to Asencio:

> You are instructed that an essential fact may be proven by the testimony of a witness who by his own testimony claims to have participated in the crime charged. However, you shall receive such evidence only with great care and caution and must subject it to careful consideration in the light of other evidence in the case, and you should not convict upon such testimony unless, after a careful examination of it, you are satisfied beyond all reasonable doubt of its truth.

The rule of *State v. Carothers*, 84 Wn.2d 256, 525 P.2d 731 (1974), is that a cautionary instruction is mandatory if the conviction is sought solely upon the uncorroborated testimony of an accomplice. Such testimony is viewed by the courts with caution acquired from many years of experience with criminal procedure. In this case, however, the trial court properly declined the instruction for two reasons. In the first place, the State's case did not rest *only* on the statements of an accomplice, but, as we have observed, on independent police surveillance and discovery of the damning money from defendant's pocket. Second, the "testimony" here was not the in-court account of Asencio, who did not appear, but remarks attributed to him by others. Although the remarks were hearsay, they were not all the less trustworthy for the reasons given by our Supreme Court in *Carothers*, *i.e.*, that the accomplice may be a "special witness" who has been given leniency or immunity in return for his crucial implication of his partner in crime. In

the instant case, Asencio was not in custody nor even charged with commission of a crime when the remarks were made. Thus, the rationale for the cautionary instruction was absent.

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied June 17, 1976.

Review denied by Supreme Court October 19, 1976.

APPENDIX
THURSTON COUNTY SUPERIOR COURT
COMPLAINT FOR SEARCH WARRANT

That affiant's belief is based upon the following facts and circumstances:

On October 5, 1973, the residence of Joseph Asencio was being staked out by police officers from Olympia and Tumwater Police Departments. An agent working for the police entered the residence of Joseph Asencio at 4031 15th S.E. in Lacey. A short time later, Joseph Asencio went to 508 N. Phoenix and stayed approximately 40 minutes. He then returned to his residence on 15th and delivered $400 worth of heroin and $100 worth of speed to the agent. Agent advised me that the $100 worth of speed belonged to Asencio and that Asencio stated that he would have to trip and pick up the heroin, which he did as stated above. After the buy of heroin from Asencio, arrangements were made by the agent to meet Asencio again on the 17th or 18th to buy approximately $1,000 worth of heroin. On October 17, 1973, Asencio's house and the residence of Ken Hartnell were again staked out by police officers. Agent went to the residence of Asencio with $900 in marked money. A short time later, Joseph Asencio left his residence and was followed to the residence of Ken Hartnell. After some time, he left the residence of Ken Hartnell and returned to his own residence. Asencio was gone from his residence approximately 45 minutes to an hour. He was under surveillance at all times. After Asencio returned to his residence, I was advised by the agent that the buy had gone down and he had purchased $750 worth of opium from Joseph Asencio before Asencio had left his residence. Asencio told agent that he would have to trip for the heroin and it was at that time that Asencio left the residence and went to the above-described address. After Asencio had returned he delivered the heroin to the agent. After Joseph Asencio's arrest, $750 [sic] of the marked money was found on his person. The $150 [sic] is at this time unaccounted for and believed to be at the above-described residence.

This agent is reliable in that he has given information in the past which proved reliable and has given information and purchased drugs which has resulted in numerous arrests and convictions. Said agent is commissioned as a deputy sheriff in a county in the state of Washington.