[No. 47011–1. En Banc. December 31, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. PATRICK
EUGENE COYLE, *Petitioner.*

2

*Robert H. Scott, Jr.,* for petitioner.

*Judith L. McCauley, Prosecuting Attorney,* for respondent.

BRACHTENBACH, J.—Defendant was convicted of possession of marijuana with intent to deliver. After a suppression hearing, the trial court ruled that noncompliance by the police with the "knock–and–wait" statute, RCW 10.31.040, was excused when they entered the motel room where he was located. The Court of Appeals affirmed on a different ground. *State v. Coyle,* 25 Wn. App. 349, 606 P.2d 289 (1980). We reverse.

While investigating a suspected prowler incident at the Eddie Mays Inn shortly before midnight, Officer Thomas of the East Wenatchee Police Department detected the odor of marijuana emanating from room 119. Thomas did not investigate at that time, but left to seek assistance since he suspected a party was in progress. He returned to the inn 20 minutes later with three other uniformed officers. No attempt to obtain a search warrant had been made.

The officers went to the motel desk, where they learned room 119 was rented to a Dennis Wahl. The police knew nothing about the occupants of the room beyond this information. One officer went behind the motel room, which was on the first floor, to prevent a possible escape from a rear window. This area behind the inn was rocky, bushy, and poorly illuminated.

Officer Brooks smelled marijuana when he placed his nose next to the door of room 119. Brooks heard a conversation in progress. The voice of one speaker, Tomlinson, became louder, presumably indicating he was approaching the door. Brooks overheard Tomlinson state "I will be up in the lounge getting us a buy on another half a pound." Brooks intended to knock on the door, wait for an answer, and announce that police were present. As Brooks was in the process of knocking, the door was opened by Tomlinson. Brooks grabbed the shocked Tomlinson and handed him to an officer behind him. Neither the officers nor Tomlinson said anything. This occurrence did not cause any commotion which could have alerted the other individual in the room, defendant Coyle, of the officers' presence.

The motel room is "L" shaped, and the officers could not see anyone after the door was opened. Without making any announcement, and without being denied entry to the room, Brooks cautiously entered. When Brooks reached the hallway leading to the bedroom, he observed defendant standing over an open suitcase containing marijuana. Defendant was stunned when he saw Brooks. Brooks testified defendant "looked like he was going to make a move," but he did not. Defendant and Tomlinson were promptly arrested. At the police station, an hour after his arrest, defendant voluntarily confessed to possession of marijuana with intent to sell.

Defendant moved prior to trial to suppress the marijuana and his confession because the police had violated the knock and wait statute. The court agreed that the police had not complied with the statute, but found that noncompliance was excused on two alternative grounds: (1) Tomlinson's statement which was overheard by Brooks waived defendant's right to privacy, and (2) the possibility of an escape through a rear window constituted an exigent circumstance. Defendant was subsequently convicted.

The Court of Appeals affirmed defendant's conviction on a different theory. The court reasoned that since Tomlinson was aware of the officers' presence and purpose when he

opened the door, requiring strict compliance with the statute would have been useless. *State v. Coyle, supra* at 351, 352.

I

The preliminary inquiry is whether the statute is applicable in this case. The statute provides:

> To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance.

RCW 10.31.040. An argument can be made that the statute is not applicable because the officers arguably did not "break open" any part of the motel room.

▮▮▮▮ In interpreting a statute, the court seeks to foster the purposes for which it was enacted. *See, e.g., In re Lehman,* 93 Wn.2d 25, 27, 604 P.2d 948 (1980); *Burlington N., Inc. v. Johnston,* 89 Wn.2d 321, 326, 572 P.2d 1085 (1977). The purposes of a knock and wait statute are: (1) reduction of potential violence to both occupants and police arising from an unannounced entry, (2) prevention of unnecessary property damage, and (3) protection of an occupant's right to privacy. *E.g., United States v. Bustamante–Gamez,* 488 F.2d 4, 9 (9th Cir. 1973), *cert. denied,* 416 U.S. 970, 40 L. Ed. 2d 559, 94 S. Ct. 1993 (1974); *State v. Hilliard,* 18 Wn. App. 614, 616, 570 P.2d 160 (1977), *review denied,* 90 Wn.2d 1007 (1978); 2 W. LaFave, *Search and Seizure* § 4.8(a), at 124 (1978). The importance of these laudable purposes precludes a rigid interpretation of the statute. These purposes clearly will frequently be fostered in instances when a literal "breaking open" by the police does not occur. *Cf. Sabbath v. United States,* 391 U.S. 585, 589–90, 20 L. Ed. 2d 828, 88 S. Ct. 1755 (1968). We therefore agree with the overwhelming weight of authority that a knock and wait statute is applicable not only when force is used to obtain entry, but whenever police enter without valid permission. *See, e.g., Sabbath v.*

*United States, supra* at 589–90; *State v. Miller,* 7 Wn. App. 414, 418–19, 499 P.2d 241 (1972), which contains an extensive discussion of the rule; and *State v. Hartnell,* 15 Wn. App. 410, 417, 550 P.2d 63, *review denied,* 87 Wn.2d 1010 (1976).

Since the police entry in this case was nonconsensual, and the statute was therefore applicable, the next issue which must be resolved is whether the police satisfied the statute's requirements.

## II

To comply with the statute, the police must, prior to a nonconsensual entry, announce their identity, demand admittance, announce the purpose of their demand, and be explicitly or implicitly denied admittance. *See, e.g., Bryson v. United States,* 419 F.2d 695, 701 (D.C. Cir. 1969) (per curiam); *State v. Lowrie,* 12 Wn. App. 155, 156, 528 P.2d 1010 (1974); 2 W. LaFave, *supra,* § 4.8(c), at 129, § 6.2(c), at 400. These requirements must be satisfied although the police enter through an open door. *State v. Talley,* 14 Wn. App. 484, 490, 543 P.2d 348 (1975).

The constitution also places restrictions on police entry. The Fourth Amendment, as interpreted, requires that a nonconsensual entry by the police "be preceded by an announcement of identity and purpose on the part of the officers." *State v. Young,* 76 Wn.2d 212, 214, 455 P.2d 595 (1969); *accord, e.g., Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963); *State v. Carufel,* 112 R.I. 664, 668, 314 A.2d 144 (1974); 2 W. LaFave, *supra,* § 6.2(a), at 397. *See generally* Blakey, *The Rule of Announcement and Unlawful Entry,* 112 U. Pa. L. Rev. 499 (1964).

The police entry in this case plainly constituted a prima facie violation of the statute and the Fourth Amendment. Prior to their nonconsensual entry, the police did not announce their identity or their purpose for desiring entry, did not demand admittance, and were not denied admittance. Failure to satisfy these requirements, however, does not thereby invalidate an arrest in all cases. Noncompliance

may be excused, and an arrest therefore valid, in certain limited instances. *See, e.g., Ker v. California, supra* at 47 (Brennan, J., dissenting) (listing exceptions when "unannounced police entry" would not violate the Fourth Amendment); *State v. Young, supra* at 217 (presence of exigent circumstances). The trial court's and the Court of Appeals' reasons for believing compliance was excused will be evaluated below.

## III

■ The trial court ruled that police compliance with the knock and wait statute was excused because Tomlinson's incriminating statement, which was overheard by the police, waived any right to privacy. The State has the burden of showing the accused has waived a right protected by the Fourth Amendment. *See State v. Smith,* 72 Wn.2d 479, 481, 434 P.2d 5 (1967). The accused must waive such a right "knowingly, intentionally, and voluntarily". *State v. Forza,* 70 Wn.2d 69, 71, 422 P.2d 475 (1970). Every reasonable presumption is indulged against waiver of a constitutional right. *See State v. LaBelle,* 18 Wn. App. 380, 389, 568 P.2d 808 (1977).

Defendant in this case clearly did not directly waive his right to police announcement, since he did not communicate with the police prior to their entry. Therefore the dispositive question, assuming arguendo that Tomlinson's statement constituted a waiver,[1] is whether that statement did thereby waive this *defendant's* constitutional right to

---

[1]For the sake of this discussion we assume that Tomlinson's statement constituted a valid waiver. We presently need not decide whether this assumption is accurate, but we do note that it would be subject to question. Since Tomlinson was presumably unaware that his statement could be overheard outside the motel room, and was certainly unaware that police were present, he arguably could not have intended a knowing, intentional, and voluntary waiver. *See State v. Dugger,* 12 Wn. App. 74, 79, 528 P.2d 274 (1974). Even if we assume that Tomlinson waived constitutional protection of his statement, *see State v. Gerry,* 23 Wn. App. 166, 595 P.2d 49, *review denied,* 92 Wn.2d 1017, *cert. denied,* 444 U.S. 994, 62 L. Ed. 2d 424, 100 S. Ct. 527 (1979) (holding that there is no reasonable expectation of privacy in motel room conversations which can be heard outside the room with the unaided ear), his constitutional right to receive police announcement prior to

receive notice from the police of their identity and purpose prior to their entry.

█ In some instances, evidence discovered by means of one joint possessor's waiver of a Fourth Amendment right is admissible against anyone with joint control of the premises. *See, e.g., White v. United States,* 444 F.2d 724 (10th Cir. 1971); *State v. Smith,* 88 Wn.2d 127, 139–40, 559 P.2d 970, *cert. ·denied,* 434 U.S. 876, 54 L. Ed. 2d 155, 98 S. Ct. 226 (1977). Evidence discovered by such a waiver, however, "is inadmissible against a person having equal rights in the premises if he is present . . . and does not consent . . . ." *United States v. Robinson,* 479 F.2d 300, 303 (7th Cir. 1973). *Cf. United States v. Poole,* 307 F. Supp. 1185, 1189 (E.D. La. 1969). That is the situation in this case. Since room 119 was rented neither to Tomlinson nor defendant, their "rights to the premises" were presumably the same. We so presume since the State presented no evidence as to the nature of Tomlinson's or defendant's occupancy in the room. There is no indication in the record that defendant consented to Tomlinson's presumed waiver. Therefore evidence discovered by means of Tomlinson's presumed waiver is not admissible against defendant.

In summary, defendant did not directly waive his Fourth Amendment rights by a statement of his own, and there is no evidence that he consented to Tomlinson's presumed waiver. The State therefore has failed to meet its burden of proving that defendant made a valid waiver of his right to receive police announcement of their identity and purpose prior to entry.

## IV

█ The trial court's alternative ground for excusing noncompliance with the statute was that the possibility of an escape through a rear window of the motel room constituted an exigent circumstance. In evaluating this conclusion, and the discussion in part V of this opinion, it must

---

their entry would presumably remain unimpaired. Waiver of one constitutional right generally does not thereby waive a separate, unrelated constitutional right.

be borne in mind that the State bears the burden of showing that a valid exception to the knock and wait rule has been satisfied. *See State v. Talley,* 14 Wn. App. 484, 490, 543 P.2d 348 (1975); *cf. Miller v. United States,* 357 U.S. 301, 313, 2 L. Ed. 2d 1332, 78 S. Ct. 1190 (1958) (requirement of announcing presence and purpose mandated by federal equivalent to RCW 10.31.040 should not be given "grudging application"); *Ker v. California, supra* at 53 (Brennan, J., dissenting) (Fourth Amendment requires "rigid restrictions" on unannounced police entries).

We have recognized that the presence of exigent circumstances can render an unannounced entry constitutional and excuse compliance with the requirements of RCW 10.31.040. *State v. Young, supra* at 217. The possibility that a suspect may escape clearly can create such an exigency. *See, e.g., State v. Gallo,* 20 Wn. App. 717, 724, 582 P.2d 558, *review denied,* 91 Wn.2d 1008 (1978).[2]

To prove that exigent circumstances are present, the State must be able to "point to specific, articulable facts and the reasonable inferences therefrom which justify the intrusion." *State v. Diana,* 24 Wn. App. 908, 911, 604 P.2d 1312 (1979); *see* 2 W. LaFave, *supra,* § 6.2(d), at 404 (particular facts of the case must exist to justify finding that an escape exigency was present). The mere possibility of escape is not sufficient to satisfy the "particularity" requirement, *see* Comment, *Announcement in Police Entries,* 80 Yale L.J. 139, 159 n.90 (1970), and neither is a general presumption that certain classes of suspects are more likely to attempt to escape. *People v. Rosales,* 68 Cal. 2d 299, 305, 437 P.2d 489, 66 Cal. Rptr. 1 (1968) (Traynor, C.J.); *cf. Coleman v. Reilly,* 8 Wn. App. 684, 687, 508 P.2d 1035 (1973) (unannounced entry not justified if police have no "more than mere suspicion" that suspect will destroy evidence). Since the particular reason for an unannounced

---

[2]Exigent circumstances will also often be found if, for example, compliance would "endanger the police or innocent persons . . . or allow the destruction of evidence." *State v. Campbell,* 15 Wn. App. 98, 101–02, 547 P.2d 295 (1976).

entry must be justified by the specific facts of the case, an officer's general experience which would tend to suggest an exigency may be present is likewise insufficient. *People v. DeSantiago,* 71 Cal. 2d 18, 28, 453 P.2d 353, 76 Cal. Rptr. 809 (1969).

The particularity requirement must generally be satisfied in either of two ways: (1) police have specific prior information that a suspect has resolved to act in a manner which would create an exigency, or he has made specific preparations to act in such a manner; *People v. DeSantiago, supra* at 29; *see State v. Beason,* 13 Wn. App. 183, 188, 534 P.2d 44 (1975); *cf. People v. Floyd,* 26 N.Y.2d 558, 562, 260 N.E.2d 815, 312 N.Y.S.2d 193 (1970) (no escape exigency existed since police had no reason to believe suspect would or could escape); or (2) police are "confronted with some sort of contemporaneous sound or activity alerting them" to the possible presence of an exigent circumstance. *State v. Mueller,* 15 Wn. App. 667, 670, 552 P.2d 1089 (1976); *accord, People v. DeSantiago, supra* at 29; *State v. Young, supra; see State v. Dugger,* 12 Wn. App. 74, 81, 528 P.2d 274 (1974), *review denied,* 85 Wn.2d 1003 (1975) (destruction of evidence exigency not established since prior to their entry police had heard nothing to suggest such destruction was in progress).

The escape exigency in this case arose solely from the generalized speculation of the officers. The police had absolutely no information about the defendant prior to their entry; they merely entertained a general suspicion, a speculative possibility of escape. The State therefore clearly failed to satisfy its burden of showing that prior to their unannounced entry the police were aware of specific facts in this case which indicated that defendant had resolved to make an escape attempt, had made preparations to escape, or had initiated an escape attempt prior to the police entry. The trial court's finding that an escape exigency existed was therefore erroneous.

## V

 The Court of Appeals held that compliance with the knock and wait statute was not required because it would have been a "useless act." 25 Wn. App. at 349. Compliance is a "useless gesture," and is therefore not necessary, "when it is evident from the circumstances that the authority and purpose of the police is already known to those within the premises." 2 W. LaFave, *supra,* § 4.8(f), at 137; *accord, e.g., Ker v. California,* 374 U.S. 23, 55, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963) (Brennan, J., dissenting); *State v. Campbell,* 15 Wn. App. 98, 101–02, 547 P.2d 295 (1976).

There is some disagreement among courts on the required degree of probability that an occupant is aware of the presence, identity, and purpose of the police in order for the useless gesture exception to be applicable. We agree with the clear majority of courts, including the United States Supreme Court, that noncompliance may not be excused unless the police are "virtually certain" the occupants are aware of their presence, identity, and purpose prior to their entry. *See Miller v. United States,* 357 U.S. 301, 310, 2 L. Ed. 2d 1332, 78 S. Ct. 1190 (1950); *State v. Miller,* 7 Wn. App. 414, 417, 499 P.2d 241 (1972); *see* 2 W. LaFave, *supra,* § 4.8(f), at 138; Comment, *Announcement in Police Entries,* 80 Yale L.J. 139, 157–58 (1970). *But see* 2 W. LaFave, *supra* (noting that some courts have held it is sufficient if the police have a "reasonable" or "justified" belief that their authority and purpose are known).

The "virtual certainty" requirement was satisfied with respect to Tomlinson. He certainly knew that police were present prior to their entry, since he opened the motel room door and observed them. Although Tomlinson presumably did not know if the police had overheard his incriminating statement, he almost surely knew, given the presence of the strong and unmistakable odor of marijuana, that the police were present to make arrests. *See* 2 W. LaFave, *supra,* § 6.2(e), at 405 (if occupants are aware of the presence of the police and are currently engaged in

criminal activity, it is virtually certain they know the purpose of the police is to make arrests). It is also apparent that the virtual certainty requirement was not satisfied with respect to defendant. Prior to the officers' entry, defendant was plainly unaware that the police were even present. The useless gesture exception is accordingly inapplicable in this case unless satisfaction of this exception with respect to Tomlinson thereby excuses noncompliance with respect to defendant as well.

The most fruitful way to resolve whether excused noncompliance with respect to Tomlinson is sufficient as to defendant is to reexamine the purposes of the knock and wait statute. As we noted earlier, the purposes of this statute are threefold: (1) reduction of potential violence arising from an unannounced police entry, (2) prevention of unnecessary property damage, and (3) protection of the occupant's right of privacy.

Police compliance with the statute would have fostered these purposes with respect to defendant, and satisfaction of the "useless gesture" exception accordingly should not be "imputed" from Tomlinson to defendant. The potential for violence was nearly realized in this case. By Officer Brooks' own admission, his unexpected appearance so stunned defendant that he was nearly prompted to "make a move." Had defendant done so, property damage, in addition to physical injury, could have occurred (*e.g.,* objects in the motel room damaged in a struggle between defendant and policemen). The nonoccurrence of either violence or property damage is a felicitous fortuity, and cannot constitute an after–the–fact justification which excuses the unannounced entry. *Cf. United States v. Di Re,* 332 U.S. 581, 595, 92 L. Ed. 210, 68 S. Ct./222 (1948); *State v. Lesnick,* 84 Wn.2d 940, 944, 530 P.2d 243 (1975). The entry in this case is also inconsistent with the statutory purpose of affording substantial protection to an occupant's right of privacy. There was simply no need for the police to enter without announcement in this case. Absent such need, the right of

privacy protected by the statute was impermissibly infringed.

We emphasize that our holding on this issue is narrow. Defendant in this case was unaware of the presence and purpose of the police prior to their entry. When Officer Brooks entered the motel room, he knew at least one other person was on the premises, since he had overheard a conversation between Tomlinson and another individual. He could not have been virtually certain that this individual was aware of the presence and purpose of the police. We express no opinion on how a case without these factors would be resolved. Such decisions must await future litigation.

Defendant's unawareness of the presence and purpose of the police prior to their entry distinguishes this case from two decisions cited by the Court of Appeals where a door was opened without knowledge that police were outside of it, and the police then made an unannounced entry. In *United States v. Lopez,* 475 F.2d 537 (7th Cir.), *cert. denied,* 414 U.S. 839, 38 L. Ed. 2d 74, 94 S. Ct. 89 (1973), the *defendant* opened the door and was therefore presumably aware of the presence and purpose of the police prior to their entry. Defendant's wife opened the door in *United States v. Nicholas,* 319 F.2d 697 (2d Cir.), *cert. denied,* 375 U.S. 933, 11 L. Ed. 2d 265, 84 S. Ct. 337 (1963). She threw herself at the officers and screamed "police." Prior to the police entry, defendant heard this commotion and unsuccessfully attempted to dispose of heroin in his possession. Defendant argued that the federal knock and wait statute had been violated, but the court rejected this contention because: (1) the wife's conduct deprived the police of an opportunity to make an announcement, and (2) an announcement would have been pointless, presumably because she in effect informed defendant of substantially the same things that the police themselves would have. The present case is clearly distinguishable. The police were not deprived of an opportunity to make an announcement, nor

was the defendant informed of their presence by the person who opened the door.

For the foregoing reasons, the Court of Appeals incorrectly applied the "useless gesture" exception to this case.

## VI

■ In summary, we hold that the police entry did not comply with the requirements of RCW 10.31.040 and the fundamental protection of the Fourth Amendment. Tomlinson's statement did not waive defendant's rights protected by these provisions. The police entry was not justified by an exception excusing noncompliance. The proper remedy for an unexcused violation is suppression of the evidence obtained by the violation. *E.g., State v. Hartnell,* 15 Wn. App. 410, 417, 550 P.2d 63, *review denied,* 87 Wn.2d 1010 (1976); *State v. Dugger,* 12 Wn. App. 74, 77, 528 P.2d 274 (1974), *review denied,* 85 Wn.2d 1003 (1975). Accordingly, defendant's motion to suppress the marijuana and his confession should have been granted.

Reversed.[3]

UTTER, C.J., ROSELLINI, STAFFORD, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and HAMILTON, J. Pro Tem., concur.

---

[3]We wish to briefly mention an issue not addressed by the parties. Should the police in this case have obtained a warrant before entering the motel room? The United States Supreme Court has recently held that, absent exigent circumstances, and although probable cause is present, the Fourth Amendment prohibits a warrantless, nonconsensual police entry into a suspect's home to make an arrest. *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). *Payton* would arguably render the warrantless entry in this case unconstitutional. *Cf. Payton, supra* at 598 & n.46 (asserting that RCW 10.31.040 authorizes "warrantless entry into the home to arrest even in the absence of exigent circumstances") (dictum). Since we reverse the Court of Appeals on other grounds, we express no opinion on the constitutionality of the failure of the police to obtain a warrant.