[No. 9357–0–II. Division Three. June 16, 1987.]

THE STATE OF WASHINGTON, *Appellant,* v. RONALD
C. CHICHESTER, *Respondent.*

*David H. Bruneau, Prosecuting Attorney,* and *James R. Hickman, Deputy,* for appellant.

*Craig A. Ritchie* and *Doherty, Doherty & Ritchie,* for respondent.

THOMPSON, J.*—The State appeals the trial court's suppression of evidence. We reverse.

*This case was heard by a panel of Division Three judges sitting in Division Two.

On January 19, 1985, Deputy Donald Kirst of the Clallam County Sheriff's Department met with the defendant's wife, Jeanette Chichester. She told the deputy that Mr. Chichester had recently purchased cocaine, and was in the process of cutting and packaging it at the family home. She also told the deputy a substantial quantity of drug–related money was kept in their refrigerator. Deputy Kirst had previous information from an informant that Mr. Chichester had made a drug buy the previous day in Seattle.

Based upon this information, Deputy Kirst first attempted to secure a search warrant, unsuccessfully. He then decided to have Mrs. Chichester sign a consent to search. Mrs. Chichester did so, and returned to the home. They arranged to have Mrs. Chichester call her mother when she arrived at the home. Her mother was to tell the officers whether Mr. Chichester and the drugs were still present at the home. After notification, Deputies Kirst and Reschan went to the front door, and Deputy Fuchser to the back.

Deputy Kirst knocked, yelled "Police", and entered with his gun drawn, encountering Mr. Chichester. During the entry, Mrs. Chichester ran out the back door and waited in the yard. Deputy Kirst conducted a short search for other persons while the other two officers detained Mr. Chichester. Deputy Kirst then showed Mr. Chichester the consent form and proceeded to search, locating what he believed to be marijuana, cocaine bindles, and other drug–related paraphernalia. Mr. Chichester was arrested on drug charges.

At a suppression hearing the trial court found the consent to search ineffective against a spouse present and not given an opportunity to consent or deny consent, even when faced with a consent by another person authorized to grant consent. The evidence seized was suppressed, effectively terminating the State's case.

The sole issue is whether the trial court erred in suppressing evidence seized by the police pursuant to a consent to search given by the wife of the defendant, where the defendant was present but was not asked whether he consented to the search. As a general rule, warrantless searches

and seizures are per se unreasonable. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). If a search is warrantless, it must fall within one of the "jealously and carefully drawn" exceptions to the warrant requirement to be upheld as legal. *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979); *State v. Chrisman,* 94 Wn.2d 711, 715, 619 P.2d 971 (1980), *rev'd on other grounds,* 455 U.S. 1, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982), *adhered to on remand,* 100 Wn.2d 814, 676 P.2d 419 (1984). Consent to search is such an exception. The State bears the burden of establishing the validity of a warrantless search based upon consent. *State v. Mathe,* 102 Wn.2d 537, 540, 688 P.2d 859 (1984).

The issue of third party consent to search was discussed in *Mathe.* There, faced with a landlord consent to a search of a tenant's room, the court adopted the "common authority" test of *United States v. Matlock,* 415 U.S. 164, 171, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974) as a guide to determine third party consent issues under Const. art. 1, § 7. *Matlock* held the "consent of one who possesses common authority over premises or effects is valid as against the absent, non-consenting person with whom that authority is shared". *Matlock,* 415 U.S. at 170. A defendant's spouse having equal right to occupation of the premises may consent to entry of the premises. *See, e.g., State v. Gillespie,* 18 Wn. App. 313, 316, 569 P.2d 1174 (1977), *review denied,* 89 Wn.2d 1019 (1978); *State v. Hartnell,* 15 Wn. App. 410, 417, 550 P.2d 63, *review denied,* 87 Wn.2d 1010 (1976); *see generally* 3 W. LaFave, *Search and Seizure* § 8.4(a) (2d ed. 1987). However, the Washington cases involve situations where a wife, while on the premises, voluntarily allowed police officers into the premises, unlike here where the consent was given while the consenting spouse was absent from the home, and the police entered without her aid.

Here, the police officer testified he knocked on the door, hollered "Police", and then opened the door and entered

with his weapon drawn. He did not wait for the door to be opened, but proceeded into the home and immediately encountered Mr. Chichester, the defendant. He then told Mr. Chichester who he was and that he had permission to search, but refused to show the permission form to the defendant, as demanded by Mr. Chichester, until he secured the house. LaFave notes that unannounced intrusion and its attendant danger is the key to determining whether consent by a third party should be effective in this situation. 3 W. LaFave, *Search and Seizure* § 8.3(d), at 250–51 (2d ed. 1987). The concerns are the same as where entry is made for purposes of making an arrest or executing a search warrant. As noted by *People v. Haskett,* 30 Cal. 3d 841, 857, 640 P.2d 776, 180 Cal. Rptr. 640, 650 (1982):

> [A]ssumption of risk inherent in co–occupancy has its limits. An entry or search, even though authorized by a co–occupant, may be so intrusive that it belies the conclusion that the parties assumed or even contemplated the risk of its occurrence by deciding to jointly inhabit the subject residence. For instance, an absent cotenant cannot authorize the police to burst into occupied premises unannounced if there is no emergency justifying such a frightening intrusion.

For this reason, some jurisdictions apply their "knock–and–wait" statutes to this situation where the party giving consent does so while absent from the home and does not "open the door" for the police. *See Duke v. Superior Court,* 1 Cal. 3d 314, 461 P.2d 628, 82 Cal. Rptr. 348 (1969); *Tompkins v. Superior Court,* 59 Cal. 2d 65, 378 P.2d 113, 27 Cal. Rptr. 889 (1963).

Washington cases hold RCW 10.31.040, the "knock–and–wait" statute, does not apply to consensual entry.[1] *State v. Sturgeon,* 46 Wn. App. 181, 182, 730 P.2d 93 (1986); *Hartnell,* at 418. However, this was so in those cases because "[w]hen consent was given, the dangers of potential vio-

---

[1]RCW 10.31.040 applies to searches as well as arrests. *State v. Young,* 76 Wn.2d 212, 455 P.2d 595 (1969); *State v. Carson,* 21 Wn. App. 318, 320, 584 P.2d 990 (1978).

lence and property damage [are] dissipated". *Hartnell,* at 417. *See also State v. Coyle,* 95 Wn.2d 1, 5, 621 P.2d 1256 (1980). Because the officer here burst in with gun drawn immediately after knocking, but without waiting for a reply, and without announcing his purpose, the concerns underlying the knock–and–wait statute are implicated; there was a potential for violence to both occupants and police arising from the manner of entry. *See State v. Ellis,* 21 Wn. App. 123, 127, 584 P.2d 428 (1978); *State v. Lowrie,* 12 Wn. App. 155, 528 P.2d 1010 (1974). Mr. Chichester's right to privacy in his home was directly affected.

 Because Mr. Chichester did not himself consent to the search, and because the police failed to "knock and wait", the State must prove exigent circumstances to justify the manner in which the police entered the home. The State must "'point to specific, articulable facts and the reasonable inferences therefrom which justify the intrusion'". *Coyle,* at 9 (quoting *State v. Diana,* 24 Wn. App. 908, 911, 604 P.2d 1312 (1979)); *State v. Jeter,* 30 Wn. App. 360, 634 P.2d 312 (1981). Here, Mrs. Chichester told Officer Kirst to expect a fight. When he knocked, he heard a noise and movement inside. He testified he did not know if the defendant was "going for a gun"; self–protection was his reason for going in armed. Danger to the arresting officer is an exigent circumstance allowing officers to enter without waiting for admission. *State v. Carson,* 21 Wn. App. 318, 322, 584 P.2d 990 (1978); *State v. Campbell,* 15 Wn. App. 98, 102, 547 P.2d 295 (1976); *State v. Wilson,* 9 Wn. App. 909, 914, 515 P.2d 832 (1973). Specific prior information that a suspect was resolved to act in a manner which would create an exigency is sufficient. *Coyle.* Since the prior warning by the wife that Mr. Chichester would put up a fight and the noise inside provided specific articulable facts which justified the intrusion, exigent circumstances permitted Officer Kirst to enter in the manner he did. Therefore, we hold the entry here was reasonable. Mr. Chichester's Fourth Amendment and Const. art. 1, § 7 protections against unreasonable searches and seizures, and his rights

to privacy were not violated.

We do not mean to imply by our decision that the "common authority" rule only applies where the person giving consent to enter and search is present, and the nonconsenting party is absent, as argued by Mr. Chichester. Our analysis and holding is dictated by the manner of entry effected by the police officer in this case. Where an occupant with an equal right to privacy in the premises acts in her own self–interest to allow seizure of illegal drugs, as here, her consent is effective, even if the other occupant has not been given an opportunity to consent. *See State v. Frame,* 45 Or. App. 723, 609 P.2d 830 (1980); *People v. Cosme,* 48 N.Y.2d 286, 397 N.E.2d 1319, 422 N.Y.S.2d 652 (1979); 3 W. LaFave § 8.3(d), at 253. *Cf. State v. Vidor,* 75 Wn.2d 607, 610, 452 P.2d 961 (1969). It is only when police do not comply with the "knock–and–wait" statute that further inquiry into the reasonableness of the police action is necessary.

The trial court's suppression of evidence is reversed and the case remanded.

McINTURFF, C.J., and GREEN, J., concur.

Reconsideration denied August 31, 1987.