490

[No. 19882-3-I.   Division One.   September 26, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. DUNCAN
FARWELL LEACH, *Appellant.*

*Donald B. Kronenberg*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Michael Hogan, Deputy*, for respondent.

GROSSE, J.—Duncan Leach seeks review of his conviction on three counts of second degree burglary and one count of second degree attempted theft. Leach alleges the convictions are based on evidence illegally seized during a warrantless search of his office.

In June of 1986, Duncan Leach established a travel agency named "Why Not Travel" in a business park in Renton. The State alleged he obtained a master key and used it to enter other offices in the business park from which he took various items. Further it also alleged that Leach filed a false insurance claim for the theft of a machine from his office.

On July 24, 1986, without first obtaining a warrant, the police searched Leach's office and seized the stolen items and the office machine. The trial court denied Leach's motion to suppress this evidence on the basis that the record established a valid consent to search by Cindy Armstrong, a/k/a Cindy Leach, Leach's girl friend. She had contacted King County police with information that Leach entered and stole items from other offices. ·Although she was not involved in the day–to–day management and operation of the business, her name was on the agency business cards as an owner. She confirmed to the police that she was listed as an owner. She had keys to the premises and occasionally did light work at the agency. However, the officers also knew before the search that Leach and Cindy were not married, even though at times they held themselves out to be husband and wife. Cindy also told the officers that even though she was listed on the lease, she had not signed the lease. Based on this information, the police had her sign a "consent to search" form allowing them to search the travel agency to look for stolen property. She also let them search the apartment she shared with Leach. The police did *not* obtain or attempt to obtain a search warrant.

Upon arrival at the office, Cindy let the police in with a key Leach had given her. The police encountered Leach on the floor of the outer office, handcuffed him, placed him on a couch, and proceeded to search the premises. There is no record that the police asked for his consent to search nor is there any record of any objection by Leach to the search. Leach contends that Cindy's consent was insufficient to justify a warrantless search of the office in his presence and without his consent.

The State has the burden of establishing the lawfulness of the warrantless search of the office. *State v. Mathe,* 102 Wn.2d 537, 540–41, 688 P.2d 859 (1984); *see also State v. Houser,* 95 Wn.2d 143, 149, 622 P.2d 1218 (1980). Had Leach been absent during the search, we could easily affirm by applying rules developed in *United States v. Matlock,* 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974), and

*State v. Mathe, supra.* The State is required to show that consent was given by a third party who possessed "common authority over or other sufficient relationship to the premises or effects sought to be inspected." (Footnote omitted.) *Matlock,* at 171. However, in *Matlock,* the Court stated that the "consent of one who possesses common authority over premises or effects is valid as against the *absent,* nonconsenting person with whom that authority is shared." (Italics ours.) *Matlock,* at 170. *See also State v. Jeffries,* 105 Wn.2d 398, 414, 717 P.2d 722, *cert. denied,* 479 U.S. 922, 93 L. Ed. 2d 301, 107 S. Ct. 328 (1986). Further, as defined in *Matlock:*

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third–party consent . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co–inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

(Citations omitted.) *Matlock,* at 171 n.7; *see also Mathe,* at 543. A similar rationale was set forth in *Mathe* which required that (1) the consenting party must be able to permit the search in his or her own right, and (2) it must be reasonable to find the defendant had assumed the risk that a co–occupant might permit a search. *Mathe,* at 543–44.

Where parties with equal rights to consent are present, one objecting and one consenting, the authorities are divided as to whether single party consent is enough. Specifically, in 3 W. LaFave, *Search and Seizure* § 8.3(d), at 251 (2d ed. 1987), it is noted:

> The *Matlock* commentators have reached conflicting conclusions on the question of whether the consent or the objection must prevail. On the one hand, the theory that *Matlock* is intended to leave the joint occupant with "freedom to act in his own or the public interest" is said to extend even to the point where that freedom must prevail when the defendant is "present and objecting."

(Footnotes omitted.) This rationale was recently endorsed in *State v. Chichester,* 48 Wn. App. 257, 262, 738 P.2d 329 (1987), a Division Three case, in which the court stated in dicta:

> We do not mean to imply by our decision that the "common authority" rule only applies where the person giving consent to enter and search is present, and the nonconsenting party is absent . . . Where an occupant with an equal right to privacy in the premises acts in her own self–interest to allow seizure . . . her consent is effective, even if the other occupant has not been given an opportunity to consent. *See State v. Frame,* 45 Or. App. 723, 609 P.2d 830 (1980); *People v. Cosme,* 48 N.Y.2d 286, 397 N.E.2d 1319, 422 N.Y.S.2d 652 (1979)[.]

(Citations omitted.) The contrary position, as stated in 3 W. LaFave, *supra* at 251–52, is that

> the consent of both is required when both are present because "ordinarily, persons with equal 'rights' in a place would accommodate each other by not admitting persons over another's objection while he was present." In terms of the *Matlock* formula, the point is that a person's authority to consent in his "own right" does not go so far as to outweigh an equal claim to privacy by a co–occupant on the scene, and that the risk assumed by joint occupancy is merely an inability to control access to the premises during one's absence. *Though there is merit to both positions, the latter has somewhat greater appeal.*

(Footnote omitted. Italics ours.) *See* Weinreb, *Generalities of the Fourth Amendment,* 42 U. Chi. L. Rev. 47, 63 n.3 (1974); *see also Silva v. State,* 344 So. 2d 559 (Fla. 1977); *Lawton v. State,* 320 So. 2d 463 (Fla. Dist. Ct. App. 1975).

The key inquiry in consent cases involves the relative expectations of privacy of the consenting and nonconsenting parties. *See United States v. Impink,* 728 F.2d 1228 (9th Cir. 1984). The *Impink* court held that "when the police intentionally bypass a suspect who is present and known by them to possess a *superior* privacy interest, the validity of third party consent is less certain" and may render the third party consent ineffective. (Italics ours.) *Impink,* at 1234.

A closer analysis of *Impink* is helpful. There, the consenting party was Guilbault, the landlord of the defendant nonconsenting party. At the time the lease was negotiated it was orally agreed that Guilbault could store personal items in an adjacent garage. On going to the garage to retrieve one of those items Guilbault noticed what was subsequently found to be a clandestine drug laboratory. Guilbault approached Impink, the occupant/caretaker of the premises, but was asked to leave. Guilbault called the police who were allowed into the house by Bolanos, the lessee, who insisted Guilbault had no right to look into the garage. When asked, Impink consented to a search of the house, but specifically denied consent to enter or search the garage. The State later argued that Guilbault impliedly consented to the search by calling the police and cooperating with the investigation. The *Impink* court analyzed the case on two bases: (1) exigent circumstances, and (2) consent. In discussing the establishment of effective consent, the *Impink* court stated at page 1232:

> The government always bears the burden of proof to establish the existence of effective consent. *E.g., Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *United States v. Whitten,* 706 F.2d 1000, 1016 (9th Cir.1983). This burden is heavier where consent is not explicit, since consent "is not lightly to be inferred." *United States v. Patacchia,* 602 F.2d 218, 219 (9th Cir.1979).

The *Impink* court discusses the *Matlock* case with regard to consent by someone who has common authority, and stated that the *Matlock* opinion "was explicitly limited to situations where 'persons generally hav[e] joint access or control for most purposes.'" *Impink,* at 1233 (quoting *Matlock,* at 171 n.7). The court identified the problem posed by the *Impink* facts as follows:

> *Matlock* thus leaves open three possible variables in the consent calculus. First, the third party may not generally have "joint access . . . for most purposes"; his right of access may be narrowly prescribed. Second, the objector may not be an "absent . . . person"; he may be

present at the time third party consent is obtained. Finally, the objector may not simply be "nonconsenting"; he may actively oppose the search.

*Impink,* at 1233. As to the first *Impink* variable, the Ninth Circuit held that the facts presented a situation wherein, as between the landlord and the lessee, the lessee had the greater right of access and control for most purposes. The court stated further that the determination was to be based upon expectations of *privacy* rather than common law definitions of property rights. *Impink,* at 1233 n.4 (citing *United States v. Matlock, supra*). In the case before us, even though Cindy was listed on the business card as a co–owner, she was not involved in the day–to–day management and operation of the business. The police knew she was only occasionally present at the agency. At the hearing she testified that she, herself, had no investment in the business. This, coupled with the fact that she and Leach were not married, casts considerable doubt on Cindy's having a coequal property interest. Even assuming arguendo that Cindy had a coequal *property* interest there is no indication in the record that the trial court considered the respective *privacy* interests as required by *Impink.*

With regard to the second and third *Impink* variables the court stated at pages 1233–34:

> At every step of the investigation . . . a person with a privacy interest superior to Guilbault's was present during the search. When Guilbault first approached the house, Impink answered the door and asked her to leave. When the police later decided to approach the house, they did so because they saw Bolanos drive to the house. Thus, the police knew that the lessee of the house was present when they began to search. We do not hold that police must invariably seek consent from the suspect before relying on a third party's consent. However, when the police intentionally bypass a suspect who is present and known by them to possess a superior privacy interest, the validity of third party consent is less certain.
>
> . . .
>
> A third factor suggesting that Guilbault could not give effective consent is Impink's request that she leave the

premises. Guilbault's authority to consent in her own right "does not go so far as to outweigh an equal claim to privacy by a co–occupant on the scene." W. LaFave, 2 *Search and Seizure* § 8.3 at 708 (1978). Balancing a claim to privacy by a full–time caretaker with a claim by a lessor is a difficult task. Even without engaging in precise balancing, however, we conclude that Impink's objection casts doubt on Guilbault's consent.

(Footnote and citations omitted.) The *Impink* court agreed with LaFave and concluded that effective consent could not be inferred under the circumstances. Indeed, under the totality of the circumstances present in *Impink,* effective consent was precluded, "[w]here a suspect is present and objecting to a search, implied consent by a third party with an *inferior* privacy interest is ineffective." (Italics ours.) *Impink,* at 1234. *See also Lucero v. Donovan,* 354 F.2d 16 (9th Cir. 1965) (permanent resident's objection vitiates part–time resident's consent).

■ We agree with *Impink* and believe the focus of the Ninth Circuit is the proper one. It is the privacy interests of occupants that the Fourth Amendment is intended to protect. Consent is an exception to the requirement of a search warrant absent exigent circumstances. To focus the analysis of a consent to search strictly on the relative property interests of the parties involved as did the *Chichester* court is to burke the constitutional principle for the sake of expediency. Therefore, we decline to follow the dicta in *Chichester* in the context of the facts of this case and hold that given the circumstances disclosed on this record, where the suspect was present, the State had to show, *at the very least,* that the suspect did not object to the search. If the suspect did object, then the analysis must focus on the relative privacy interests of the suspect and of the party purporting to consent.[1]

---

[1]We do not find it necessary to pass on the question of what the result must be in a situation where both the suspect and the consenting party have coequal privacy interests in the premises, such as might occur where a marital community occupies a family residence that is the object of the search. That question and

In the instant case, the record is deficient as to Leach's actions at the time of the search and further there is no indication of a balancing by the trial court of the relative privacy interests. Therefore, we are constrained to remand to the trial court for a hearing and for the entry of findings of fact on all the circumstances surrounding the consent and the search.

WILLIAMS and WEBSTER, JJ., concur.

Review granted by Supreme Court January 10, 1989.

related issues must be decided under the totality of the factual circumstances when they arise.