[No. 18861-2-III. Division Three. October 26, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. PEDRO LEMUS LEMUS, *Appellant*.

*Dennis W. Morgan* (of *Law Office of Dennis W. Morgan*), for appellant.

*Gary J. Brueher, Prosecuting Attorney,* and *Randy J. Flyckt, Deputy,* for respondent.

BROWN, A.C.J. — Pedro Lemus was convicted of possessing cocaine discovered in his car and on his person during a later strip search. The critical evidence was collected after a routine traffic stop for improper lane change and a search of his car without a warrant. Because the trial court erred deciding the evidence was properly seized in a plain view search or search incident to arrest, we reverse.

## FACTS

Officer Richard Washburn saw Mr. Lemus make what the officer believed to be an improper lane change on a city street in Othello. Officer Washburn stopped Mr. Lemus's

vehicle and asked for backup, a standard procedure for nighttime traffic stops. Mr. Lemus told Officer Washburn he did not have insurance. Officer Washburn decided not to charge the improper lane change, but returned to his patrol car to prepare a Notice of Infraction (NOI) for no insurance.

Officer Troy Kelly arrived as backup. Officer Washburn advised Officer Kelly that Mr. Lemus was a known drug trafficker based upon prior contacts with the Othello Police Department. Officer Washburn approached Mr. Lemus again from the driver's side of the car while Officer Kelly approached from the passenger side. To ensure officer safety, Officer Kelly illuminated the passenger compartment of the vehicle with his flashlight. Officer Kelly particularly focused his attention on Mr. Lemus's hands. Officer Washburn noticed Mr. Lemus appeared nervous, which the officer felt was inconsistent with his prior encounters with Mr. Lemus.

Officer Kelly observed that Mr. Lemus kept his right hand motionless on his pant leg. Officer Kelly noticed that when Mr. Lemus moved his right hand to accept a pen from Officer Washburn to sign the NOI, there was a white powdery substance on Mr. Lemus's pant leg that had been previously concealed from view by Mr. Lemus's right hand and arm. Officer Kelly immediately concluded the powder was "very possibly" cocaine. Officer Kelly told Officer Washburn about the powdery substance. Officer Washburn asked Mr. Lemus what the substance was and told him not to move his hands. Mr. Lemus responded by brushing the substance off his pant leg. Officer Washburn testified that based upon his training, the powder "resembled" cocaine.

When Officer Washburn returned to Mr. Lemus's car with the infraction notice he detected the odor of intoxicants on Mr. Lemus's breath that he had not initially noticed due to the smell of cigarette smoke. After learning of the powdery substance, Officer Washburn asked Mr. Lemus to exit the vehicle to perform field sobriety tests (FSTs).

During the FSTs, passed successfully by Mr. Lemus, Officer Voss arrived with the field testing kit and without a

warrant removed a sample of the white powdery substance from Mr. Lemus's vehicle. It field-tested positive for cocaine. Officer Washburn then arrested Mr. Lemus. Also during the FSTs, Officer Washburn noticed a bulge in Mr. Lemus's left front pants pocket. Officer Washburn then conducted a pat-down search. During the search, Officer Washburn felt a pointed object, which he thought might be a weapon. The object turned out to be a small scale of the type used by drug dealers, but there was no evidence the scale had been used. Later, at the station during a strip search, approximately 13.7 grams of cocaine was discovered in Mr. Lemus's underwear.

Mr. Lemus's CrR 3.6 motion to suppress the evidence seized from the car and Mr. Lemus's person was denied. Mr. Lemus was found guilty of possessing cocaine at a stipulated bench trial based upon the CrR 3.6 hearing findings. He was given a standard range sentence before he filed this appeal.

## ANALYSIS

### A. Lane Change

The issue is whether the trial court erred when making findings of fact and entering conclusions of law deciding Mr. Lemus was validly stopped for failure to signal a lane change in violation of RCW 46.61.305.

Mr. Lemus assigns error to Findings of Fact 4A and B, which state:

A. Officer Washburn observed the vehicle begin to move toward the inside SB lane. The turn signal was activated as the left front tire began to cross the lane divider.

B. Based on his observations, Officer Washburn testified that he had probable cause to believe the driver of the vehicle had committed a violation of RCW 46.61.305.

The standard of review is the same throughout this opinion. This court reviews challenged findings of fact for

substantial evidence. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the truth of the matter asserted. *Hill*, 123 Wn.2d at 644. All of the other findings in this case are unchallenged and thus verities on appeal. *Hill*, 123 Wn.2d at 644. This court reviews the trial court's conclusions of law de novo. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).

 Officer Washburn testified on direct that Mr. Lemus changed lanes before he signaled. On cross, Officer Washburn agreed that his written report described Mr. Lemus's action as signaling "as the left front tire crossed the lane line." Officer Washburn elaborated by stating the left front of Mr. Lemus's vehicle was "across the lane line." Officer Washburn stated his belief that Mr. Lemus had committed "the traffic infraction of failing to signal properly prior to changing a lane." This testimony is sufficient to persuade a fair-minded person that Mr. Lemus crossed the lane line before he signaled.

Conclusion of Law 2 states: "The initial traffic stop for failing to signal intent to change lanes was valid." RCW 46.61.305 partly states:

> (1) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.
>
> (2) A signal of intention to move or move right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

Absent ambiguity, we rely solely on the language of the statute. *State v. Azpitarte*, 140 Wn.2d 138, 142, 995 P.2d 31 (2000). Paraphrased in the affirmative, RCW 46.61.305(1) plainly means that the driver must make a lane change safely *and* with an appropriate signal. RCW 46.61.305(2) clearly requires a signal for at least 100 feet *before* the lane change. Given the findings, and the clear meaning of RCW 46.61.305, we conclude Officer Washburn had probable

cause to believe Mr. Lemus had committed an infraction. Accordingly, Conclusion of Law 2 is correct; the initial traffic stop was valid.

## B. Plain View Search

The issue is whether the trial court erred by denying Mr. Lemus's motion to suppress evidence and deciding in Conclusion of Law 7 that the facts supported probable cause for the warrantless search of Mr. Lemus's person and the front seat of his vehicle under the "plain view search" exception to the general rule requiring warrants.

Conclusion of Law 7 states:

Officer Kelly's observation of Mr. Lemus' arm position, his observation of the white powdery substance on Mr. Lemus' pants leg which had been under Mr. Lemus' arm and hand, Mr. Lemus' actions in brushing the substance off his pants leg [this factor is neutral since Mr. Lemus' reaction could be interpreted as either spontaneous or intentional], and the moving of his hands after being told not to, were sufficient to establish probable cause for a plain-view search of Mr. Lemus' person and the front seat of the vehicle.

▊ Initially, we discuss the seizure of Mr. Lemus. Both sides agree the traffic stop of Mr. Lemus constituted a seizure. *See State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999). Mr. Lemus does not contend the traffic stop was a pretext. *See Ladson*, 138 Wn.2d at 358 (pretextual traffic stops violate article I, section 7 of the Washington Constitution). Mr. Lemus, relying on *State v. McKenna*, 91 Wn. App. 554, 958 P.2d 1017 (1998), argues the seizure should have ended once he signed the NOI. The State, citing *State v. Tijerina*, 61 Wn. App. 626, 811 P.2d 241 (1991), contends seeing suspected cocaine and smelling intoxicants justified extending the scope of the initial stop.

*McKenna* is inapposite because after his initial arrest another officer released Mr. McKenna before the critical search. *McKenna*, 91 Wn. App. at 556-57. The *McKenna* court held the release extinguished any authority to later

conduct a search incident to the earlier arrest. *McKenna,* 91 Wn. App. at 562-63. The issue here is quite different; whether justifiable grounds existed for extending the initial seizure.

■ A stop for a traffic infraction can be extended solely when an officer has articulable facts from which the officer "could reasonably suspect criminal activity." *Tijerina,* 61 Wn. App. at 629 (citing *State v. Gonzales,* 46 Wn. App. 388, 394, 731 P.2d 1101 (1986)). And the continued detention must be "limited to the length of time needed to investigate the increasingly suspicious circumstances." *Gonzales,* 46 Wn. App. at 395 (citing *State v. McIntosh,* 42 Wn. App. 579, 712 P.2d 323 (1986)).

■ Here, Officer Kelly sighted the suspected cocaine as Mr. Lemus reached up to sign the NOI. Officer Washburn also detected the odor of intoxicants at around the same time. Significantly, Mr. Lemus does not challenge the validity of the pat-down search, which further extended the initial seizure. These facts would lead a reasonable person to suspect Mr. Lemus had committed at least an alcohol offense and thus provided an independent basis for extending the initial seizure. *Gonzales,* 46 Wn. App. at 395; *see also Ladson,* 138 Wn.2d at 363 (Madsen, J., dissenting).

■ Mr. Lemus also contends briefly that his removal from the vehicle in order to conduct the FSTs was a mere pretext to allow time for the automobile search. As he cites no authorities to support this proposition, this court need not consider the matter. *State v. Johnson,* 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). In any event, there is nothing in the record to suggest the FSTs were conducted for any reason other than a legitimate suspicion that Mr. Lemus was under the influence of alcohol.

In sum, we conclude the extended seizure of Mr. Lemus was reasonable. Next we discuss the validity of the seizure of contraband from the interior of the automobile.

■ Generally, a warrantless search and seizure is per se unreasonable under article I, section 7 of the Washington

Constitution. *Ladson*, 138 Wn.2d at 349. And occupants of automobiles have a privacy interest under article I, section 7, which includes " 'freedom from warrantless searches absent special circumstances.' " *City of Seattle v. Mesiani*, 110 Wn.2d 454, 457, 755 P.2d 775 (1988) (quoting *State v. Stroud*, 106 Wn.2d 144, 148, 720 P.2d 436 (1986)); *see also State v. Ozuna*, 80 Wn. App. 684, 691, 911 P.2d 395 (1996). Special circumstances include several narrowly drawn exceptions. *Ladson*, 138 Wn.2d at 349. The State must prove one of these exceptions applies. *Ladson*, 138 Wn.2d at 349-50.

 Here, the State contends the warrantless search and seizure fell under the "plain, or open view exception" to the warrant requirement. The "plain view" doctrine applies after the officer intrudes into an area or activity where a reasonable expectation of privacy exists. *State v. Seagull*, 95 Wn.2d 898, 632 P.2d 44 (1981). If the officer has made a justifiable intrusion and sights contraband, he can seize the evidence without a warrant. *Seagull*, 95 Wn.2d at 901-02. But, the plain view doctrine justifies a seizure solely where the officer has legal "access" to the seized contraband. 2 WAYNE R. LAFAVE, JEROLD H. ISRAEL, NANCY J. KING, CRIMINAL PROCEDURE, §3.2(b) at 55 (2d Ed. 1999) (footnote omitted); *see also State v. Kennedy*, 107 Wn.2d 1, 12-13, 726 P.2d 445 (1986) (explaining need for prior justification to legally search under driver's seat for weapons).

 By contrast, the "open view" doctrine applies when an officer observes contraband from a "nonconstitutionally protected area." *Kennedy*, 107 Wn.2d at 10 (citing *Seagull*, 95 Wn.2d at 901-02). The "open view" observation is thus not a search at all but may provide evidence supporting probable cause to constitutionally search; in other words, a search pursuant to a warrant. *See State v. Bobic*, 140 Wn.2d 250, 254, 255, 258-59, 996 P.2d 610 (2000) (officer observation of contraband through hole in wall of storage unit, which led to search warrant, held not to be search under open view doctrine).

 Here, Officers Washburn and Kelly stood outside

the automobile parked on a city street and conducted a valid, routine traffic stop. Mr. Lemus does not have any expectation of privacy on a city street. In other words, Mr. Lemus cannot claim constitutional privacy protection in the places where these officers stood. *See State v. Young*, 28 Wn. App. 412, 416-17, 624 P.2d 725 (1981). "There is no expectation of privacy shielding that portion of an automobile which can be viewed from outside by diligent police officers." *Gonzales*, 46 Wn. App. at 397 (citing *Texas v. Brown*, 460 U.S. 730, 740, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983)). Further, Officer Kelly's use of a flashlight, as a routine officer safety measure, did not turn the observation into "an intrusive method of viewing." *State v. Rose*, 128 Wn.2d 388, 399, 909 P.2d 280 (1996).

An officer's act of observing the interior of an automobile through its windows while the vehicle is parked in a public place is not a search "in the constitutional sense." *Young*, 28 Wn. App. at 417. Simply put, the "plain view" doctrine does not apply if the contraband can be viewed from outside the vehicle. Accordingly, the observation of the powdery substance on Mr. Lemus's pant leg was not a search; it was an "open view" observation of "that which was there to be seen." *State v. Myers*, 117 Wn.2d 332, 345, 815 P.2d 761 (1991) (citing *State v. Vonhof*, 51 Wn. App. 33, 38-39, 751 P.2d 1221 (1988)).

Consequently, the trial court erred in concluding that Officer Kelly's observations justified "a plain-view search of Mr. Lemus' person and the front seat of the vehicle." Our conclusion should not be interpreted to suggest, however, that the evidence collected by the officers could not be offered to a neutral magistrate in support of a request for a search warrant, a situation not present here, but discussed next.

## C. Search Incident to Arrest

The issue is whether the trial court erred by denying Mr. Lemus's motion to suppress and deciding in Conclusion of

Law 10 that the search of Mr. Lemus's vehicle was a valid search incident to his arrest.

Conclusion of Law 10 states: "The search of the vehicle was permissible as a search incident to arrest." Mr. Lemus contends he had not yet been arrested when the initial search took place. Similarly, the State "disagrees with any suggestion that Officers Washburn or Kelly seized the white substance from the seat of Mr. Lemus' vehicle pursuant to any search incident to arrest. At that point, Mr. Lemus was not under arrest." Thus, it seems both sides reject Conclusion of Law 10.

■ Nevertheless, contraband observed in "open view" is subject to seizure pursuant to a search warrant or one of the exceptions thereto. See *Bobic*, 140 Wn.2d at 254 (open view observation supported warrant for search of shed); *Rose*, 128 Wn.2d at 391 (open view observation supported telephonic warrant for search of mobile home and shed); *Gonzales*, 46 Wn. App. at 397 (open view observations supported warrant for search of automobile); *Young*, 28 Wn. App. at 419 (exigent circumstances justified seizure of contraband observed in open view of parked car).

■ Here, according to the unchallenged findings of the trial court, Officer Voss retrieved a sample of the suspected contraband from the interior of the automobile and field-tested it while Officer Washburn conducted the FSTs. After the test confirmed the substance was cocaine, Officer Washburn arrested Mr. Lemus. We limit our review to findings assigned as error. *State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997). Unchallenged facts are binding on appeal and thus not subject to independent review. *State v. Hill*, 123 Wn.2d 641, 644-45, 870 P.2d 313 (1994).

■ Of course, evidence seized or inventoried pursuant to a valid arrest is generally admissible in evidence. *State v. Cormier*, 100 Wn. App. 457, 463-64, 997 P.2d 950 (2000). But here, according to the unchallenged findings, Officer Voss obtained and tested the contraband from the vehicle *before* Officer Washburn arrested Mr. Lemus. An arrest does not make legitimate a search incident thereto if the

arrest is based upon the fruits of an impermissible search. See *McKenna*, 91 Wn. App. at 563.

Consistently, a search incident to a custodial arrest may precede the formal arrest, so long as the search and arrest are closely related in time and place and the searching officer has probable cause to arrest *before* the search begins. *State v. Smith*, 88 Wn.2d 127, 138, 559 P.2d 970 (1977); *State v. Brantigan*, 59 Wn. App. 481, 486, 798 P.2d 1176 (1990). "The arrest need not precede the search, but it must be contemporaneous with the search." *McKenna*, 91 Wn. App. at 560 (footnotes omitted). Assuming the search and arrest were closely related in time and place, the critical question is whether Officer Washburn had probable cause to arrest Mr. Lemus prior to the search. *Smith*, 88 Wn.2d at 138. Importantly, the trial court did not conclude, and the State does not argue, that Officer Washburn had probable cause to arrest Mr. Lemus *prior to the search*.

In any event, it is an unchallenged finding that the officers believed that testing was the "only reliable" method of identifying cocaine. And other unchallenged findings show that Officer Washburn did not arrest Mr. Lemus until *after* the sample recovered from the car tested positive for cocaine. Consequently, it appears probable cause for the arrest was based solely on the fruits of the search. *McKenna*, 91 Wn. App. at 563.

Because the State does not argue any other exception to the warrant rule applies, we decide the trial court erred in concluding the seizure was a permissible search incident to arrest. Consequently, the search of the car was unconstitutional under article I, section 7. *State v. Thorson*, 98 Wn. App. 528, 990 P.2d 446 (1999), *review denied*, 140 Wn.2d 1027 (2000). The suppression motion should have been granted. Any evidence seized as a result of that illegality must be suppressed. *Thorson*, 98 Wn. App. at 540. This includes the evidence later seized at the station. But for the cocaine illegally seized from the car, Mr. Lemus would not have been arrested and subsequently strip-searched; therefore, the cocaine obtained from the strip

search should have been suppressed as well. *Thorson*, 98 Wn. App. at 540. Without the cocaine, no evidence exists supporting the possession charge. *State v. Kinzy*, 141 Wn.2d 373, 396, 5 P.3d 668 (2000).

## CONCLUSION

We hold the trial court erred by denying Mr. Lemus's suppression motion and concluding the evidence seized was the lawful result of a plain view search or search incident to arrest.

Reversed.

SCHULTHEIS and KATO, JJ., concur.