[No. 25138-8-II.   Division Two.   August 31, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. JACK DEWAYNE HOGGATT, JR., *Appellant*.

258

*Douglas S. Boole*, for appellant (appointed counsel for appeal).

*Susan I. Baur, Prosecuting Attorney*, and *A.O. Denny, Deputy*, for respondent.

MORGAN, J. — Jack Dewayne Hoggatt, Jr., appeals convictions for theft of a firearm (Count I) and unlawful possession of a firearm (Count II). The State cross-appeals an exceptional sentence downward on Count I. We affirm the convictions on both counts and the sentence on Count II. We reverse and remand for resentencing on Count I.

In the spring of 1999, Hoggatt was living in a house

leased by his girl friend, Cindy Clark. The house was small, and its living room and kitchen were essentially the same area. Hoggatt had previously been convicted of several felonies.

The house Hoggatt and Clark shared was two doors down from Hoggatt's father's house, and Hoggatt's father owned a .380 handgun. During the afternoon of May 26, 1999, while Hoggatt and his father were together at the father's house, Hoggatt asked his father for money. When his father refused, Hoggatt grabbed the .380 handgun and said he would give it back only if his father gave him $20. The father again refused, so Hoggatt took the gun and left. The father called the police to say his gun had been stolen.

At about 4 P.M., Officer Stair went to the father's house. While he was interviewing the father about what had happened, Hoggatt called and demanded $100 for the gun. At this point, according to the trial court's unchallenged finding or conclusion, Stair had probable cause to arrest Hoggatt for theft of a firearm and for unlawful possession of a firearm in the first degree.

Stair went to Hoggatt's nearby house, but no one answered the door. As Stair was walking away, some neighbors said they had just seen Hoggatt inside the residence. Stair asked the neighbors to call him if they saw Hoggatt again.

An hour or so later, Stair returned to Hoggatt's house. Clark was now home, and she allowed Stair to search the house. When Stair did not find Hoggatt, he "told Clark that she needed to call dispatch when [Hoggatt] returned."[1] According to Stair, he "did not coerce Clark in any way[,]" and he thought "that Clark was cooperating fully with the police efforts to locate [Hoggatt]."[2]

---

[1] Suppl. Clerk's Papers (SCP) at 18 (Finding of Fact 19).

[2] *Id.* (Finding of Fact 21). Clark gave contrary testimony. She said that Stair and other officers demanded rather than asked to search the house. They told her that if she did not "cooperate," she "would be in trouble," and she assumed "that they would take [her] to the jail for something." Report of Proceedings (RP) at 31. As they left, they told her "to call them as soon as [she] saw . . . or heard from

As Stair was leaving Hoggatt's residence, but while he was still in the driveway, Hoggatt phoned Clark, and Clark called Stair to the phone. Hoggatt "told Stair that the gun was in a safe place, that he wouldn't turn himself in, that his father had pointed the gun at him so he took it away, and that he had wrapped the gun up and had put it in a safe place near the river."[3]

At about 6:30 P.M., a neighbor called 911 to say that Hoggatt had returned home. Stair went back to Hoggatt's house and knocked on the front door. Clark "pulled the front door wide open and pointed to the kitchen."[4] When Stair looked where Clark was pointing, he saw Hoggatt standing in the kitchen with his back turned, talking on the phone. As Stair stepped over the threshold, he also saw a handgun on a table within Hoggatt's reach. Stair entered the house, arrested Hoggatt, and seized the gun.

On June 1, 1999, the State charged Hoggatt with theft of a firearm in Count I and unlawful possession of a firearm in Count II. Hoggatt moved to suppress, claiming that Stair's warrantless entry had been unlawful and that all resulting evidence was inadmissible. The State responded that Stair's entry had been lawful due either to Clark's consent or exigent circumstances.

On July 27, 1999, the trial court denied the motion to suppress. It ruled that Stair's entry had been justified by Clark's consent, but not by exigent circumstances. The jury convicted on both counts, and Hoggatt filed this appeal.

The main issue on appeal is whether Stair lawfully arrested Hoggatt and seized the gun. To analyze that issue, we address two separate questions. In section I, we ask whether Stair was lawfully admitted into the living room area of the home that he and Clark shared. In section II, we

[Hoggatt]," or "they would take things into their hands as far as [she] was concerned." *Id.* at 33. The trial court did not credit Clark's testimony.

[3] SCP at 18 (Finding of Fact 24).

[4] *Id.* at 19 (Finding of Fact 31). Clark testified that she let Stair in only "because they had told me that that's what I was supposed to do." RP at 34. The trial court did not credit her testimony, finding instead that she had acted voluntarily.

ask whether Stair lawfully approached Hoggatt, arrested him, and seized the gun.

## I

■ ■ Generally, an officer without a warrant may not enter a home to make an arrest.[5] Two exceptions are consent and exigent circumstances.[6] The trial court found a lack of exigent circumstances, but that Clark gave valid consent. The State does not contest the finding that there were no exigent circumstances.[7] Hoggatt does contest the finding that Clark gave valid consent. Accordingly, we analyze Clark's consent.

Hoggatt advances two arguments on consent. First, he contends that Clark did not consent voluntarily to Stair's entry into the home. Second, he contends that even if Clark consented voluntarily, she could not consent on his behalf; he had to *personally* consent where he was in plain sight a few feet away. We take each argument in turn.

## A

■ Consent must be given voluntarily.[8] Whether Clark consented voluntarily on the occasion in issue here constitutes a factual inquiry.[9] We review the trial court's findings

---

[5] *New York v. Harris*, 495 U.S. 14, 17, 110 S. Ct. 1640, 109 L. Ed. 2d 13 (1990); *Steagald v. United States*, 451 U.S. 204, 211-12, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981); *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).

[6] *Steagald*, 451 U.S. at 211; *State v. Leach*, 113 Wn.2d 735, 738, 782 P.2d 1035 (1989); *State v. Walker*, 136 Wn.2d 678, 682, 965 P.2d 1079 (1998); *State v. Cantrell*, 124 Wn.2d 183, 187, 875 P.2d 1208 (1994); *State v. Mathe*, 102 Wn.2d 537, 541, 688 P.2d 859 (1984); *State v. Chichester*, 48 Wn. App. 257, 259, 261, 738 P.2d 329 (1987).

[7] The State has neither cross-appealed nor assigned error to that finding.

[8] *State v. Johnson*, 104 Wn. App. 489, 503, 17 P.3d 3 (2001); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *State v. Bustamante-Davila*, 138 Wn.2d 964, 981, 983 P.2d 590 (1999); *State v. McCrorey*, 70 Wn. App. 103, 108, 851 P.2d 1234, *review denied*, 122 Wn.2d 1013 (1993).

[9] *Bustamante-Davila*, 138 Wn.2d at 981; *State v. Shoemaker*, 85 Wn.2d 207, 211-12, 533 P.2d 123 (1975); *McCrorey*, 70 Wn. App. at 108.

for substantial evidence.[10] The precise question is whether a rational trier of fact taking the evidence in light most favorable to the State could find consent by clear and convincing evidence.[11]

When Clark testified at the suppression hearing, she suggested that Stair and other officers had coerced her into allowing Stair to enter the home. When Stair testified at the suppression hearing, he said that he had not coerced Clark, and that Clark had manifested consent by opening the door and gesturing toward Hoggatt. The trier of fact had the right to credit Clark's or Stair's version, and it did not err by crediting Stair's.

## B

The more difficult problem is whether Clark's voluntary consent bound Hoggatt, who was a few feet away in the kitchen but visible from the front door. Translated into general terms, the problem is whether one cohabitant of a residence may consent to an officer's entering the common living area of the residence, without the consent of a second cohabitant who is present nearby. We examine federal law first and state law second.

## 1

The leading federal case is *United States v. Matlock*.[12] The defendant, his girl friend, and her parents

---

[10] *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994); *State v. Lemus*, 103 Wn. App. 94, 98-99, 11 P.3d 326 (2000).

[11] *Bumper v. North Carolina*, 391 U.S. 543, 548 n.9, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968) (consent must be shown by clear and convincing evidence); *In re Dependency of C.B.*, 61 Wn. App. 280, 282-83, 810 P.2d 518 (1991) (to produce substantial evidence is to meet burden of production; when burden of persuasion is clear and convincing evidence, burden of production is met if trier could find fact by clear and convincing evidence). *See also State v. Ferrier*, 136 Wn.2d 103, 116, 960 P.2d 927 (1998); *State v. Faford*, 128 Wn.2d 476, 489, 910 P.2d 447 (1996); *State v. Smith*, 115 Wn.2d 775, 789, 801 P.2d 975 (1990).

[12] *United States v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974).

jointly occupied a house leased by her parents. The defendant and his girl friend lived in the east bedroom. Believing that the defendant had committed a bank robbery, the police went to the house without a warrant. They encountered the defendant in the front yard and arrested him. Instead of asking for his consent to search the east bedroom, they went to the front door of the house, contacted the girl friend, and asked for her consent to search the east bedroom. She gave consent, and the officers found relevant evidence in the east bedroom. The trial court granted the defendant's motion to suppress, but the United States Supreme Court reversed. Citing *Frazier v. Cupp*,[13] *Coolidge v. New Hampshire*,[14] and *Schneckloth v. Bustamonte*,[15] the Supreme Court held that "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."[16] This was true, the Court explained, because when two or more cohabitants have joint access or control for most purposes, "it is reasonable to recognize that any of [them] has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."[17]

Based on *Matlock*, it is clear that Clark's consent bound Hoggatt for purposes of the Fourth Amendment. Clark had common authority to admit a visitor into the common living area of the house she shared with Hoggatt, it is reasonable and customary in our society that one cohabitant do that

[13] *Frazier v. Cupp*, 394 U.S. 731, 89 S. Ct. 1420, 22 L. Ed. 2d 684 (1969).

[14] *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971).

[15] *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973).

[16] *Matlock*, 415 U.S. at 171.

[17] *Matlock*, 415 U.S. at 171 n.7; *Leach*, 113 Wn.2d at 739.

even when another cohabitant is nearby, and thus Hoggatt "assumed the risk" that Clark might do that on the occasion in issue here.

## 2

State law emanates primarily from three cases. In *State v. Mathe*,[18] the defendant and his girl friend lived in a house owned by a man named Hartz. They rented a bedroom for their "exclusive use,"[19] and Hartz "neither used nor had possessions in that room."[20] Believing that the defendant had committed a robbery, the police went to the house without a warrant and spoke to Hartz at the front door. After Hartz manifested consent to their entry, they walked through the house and into the defendant's bedroom, where they found both the defendant and relevant evidence. The trial court denied the defendant's motion to suppress, but the Washington Supreme Court reversed. Expressly adopting *Matlock*'s "common authority standard . . . as the proper guide to determine test questions of consent issues under Const. art. 1, § 7,"[21] the Supreme Court noted that *Matlock*'s common authority rule has two prongs:

> First, a consenting party must be able to permit the search in his own right. Second, it must be reasonable to find that the defendant has assumed the risk that a co-occupant might permit a search.[22]

The court explained in a footnote:

> These two prongs are closely intertwined. If a person has joint control over an area, it may be proper to presume that the defendant reasonably assumes the risk that the joint control

---

[18] *State v. Mathe*, 102 Wn.2d 537, 688 P.2d 859 (1984).

[19] *Mathe*, 102 Wn.2d at 540. In fact, they rented two bedrooms, but the second was not relevant to the case.

[20] *Mathe*, 102 Wn.2d at 541.

[21] *Mathe*, 102 Wn.2d at 543; *see also Walker*, 136 Wn.2d at 685-86; *Leach*, 113 Wn.2d at 739; *Cantrell*, 124 Wn.2d at 188-89.

[22] *Mathe*, 102 Wn.2d at 543-44; *see also Leach*, 113 Wn.2d at 739-40.

may be authorized to allow a search. Thus, when joint control is found, assumption of the risk usually follows. The reverse, however, is not true. Without the right to control or exercise joint possession of a given area, no assumption of the risk analysis can validate the search.[23]

The court concluded that Hartz lacked any authority over the defendant's bedroom; that the first prong was not met; and thus that the police had entered the defendant's bedroom without valid consent.

In *State v. Leach*,[24] the defendant employed his girl friend at his travel agency. Because she was an employee, she had a key to the office. Believing he had stolen property in the office, she went there with an officer. They found that the front door was locked, so she used her key to open it. While they were inside, they encountered the defendant/employer, whom the officer then arrested, handcuffed, and placed in a chair. As far as the record showed, the officer then searched the remainder of the office *without seeking or obtaining the defendant's consent.* The officer found property stolen in a recent burglary, and the defendant was soon charged with that burglary. The trial court denied the defendant's motion to suppress, but the Washington Supreme Court remanded for further fact finding. The Supreme Court stated:

> Where the police have obtained consent to search from an individual possessing, at best, equal control over the premises, that consent remains valid against a cohabitant, who also possesses equal control, only while the cohabitant is absent. However, should the cohabitant be present and able to object, the police must also obtain the cohabitant's consent.[25]

Thus, the officer should have requested and obtained the defendant's consent "when confronted with [the defendant's] presence,"[26] and before searching the remainder of the office. The record did not show whether the officer had

---

[23] *Mathe*, 102 Wn.2d at 544 n.1.

[24] *Leach*, 113 Wn.2d 735, 782 P.2d 1035 (1989).

[25] *Leach*, 113 Wn.2d at 744.

[26] *Leach*, 113 Wn.2d at 744.

done that, so the Supreme Court remanded for further hearing.

In *State v. Walker*,[27] the child of a married couple told the police that the couple had marijuana at their house. The wife went to the police station and consented to a search. As she and the officers arrived at the house, but before they entered it, they encountered the husband, who was also just arriving. Without obtaining the husband's consent, an officer entered the home with the wife, went to the couple's bedroom, and found marijuana. After the husband and wife were both charged, the trial court granted the husband's motion to suppress because he had not personally consented. The trial court denied the wife's motion because she had personally consented. The Supreme Court was not asked to review the husband's motion, but it nonetheless stated in dictum that "because [the husband and wife] were cohabitants and both present during the search, [the wife's] consent to the search was invalid as to [the husband]."[28] The Supreme Court was asked to review the wife's motion, and it held that her consent was valid as to her even though invalid as to her husband; as a result, her motion had properly been denied. "While our decision in *Leach* supports the notion that one's otherwise voluntary consent to a search is not valid as against a cohabitant of the premises who is present when the search is conducted, it does not support the view that this consent is not valid as against the consenting person."[29]

To understand *Mathe* and *Walker*, we distinguish between (1) a searching officer's initial entry into the area of a home into which visitors are customarily received (e.g., the living room) and (2) a searching officer's intrusion into parts of the home into which visitors are not customarily received (e.g., a couple's bedroom). Neither the *Mathe* court nor the *Walker* court found unlawful the searching officer's

---

[27] *State v. Walker*, 136 Wn.2d 678, 965 P.2d 1079 (1998).

[28] *Walker*, 136 Wn.2d at 684.

[29] *Walker*, 136 Wn.2d at 686.

initial entry into the living room area where visitors were customarily received; in each case, the court found unlawful only the searching officer's intrusion into a couple's bedroom in which visitors were *not* customarily received. In both cases, moreover, the court likely would have sanctioned the officer's entry into the living room if it had isolated and addressed that question. The Washington Supreme Court has noted several times its adoption of *Matlock*;[30] *Matlock* rests on the idea of assumption of risk; and absent exceptional circumstances one cohabitant assumes the risk that another cohabitant will admit visitors to their living room, even if he or she does not assume the risk that another cohabitant will admit visitors to their bedroom.

To understand *Leach*, we make two distinctions. One is between (a) a searching officer's initial entry into that area of an office in which customers and other visitors are customarily received (e.g., the front reception desk) and (b) a searching officer's intrusion into other areas of the office (e.g., the employer's or manager's personal workspace, desk drawers, or cabinets). The other distinction is between (1) the relationship of employer and employee, in which the employer generally has a superior right to control who is admitted to the office, and (2) the relationship between or among those who cohabit a home. The *Leach* court held that *after* an officer encounters an employer, he or she may not search the rear portions of the office based only on an employee's consent. The *Leach* court did not hold that an officer may not enter the front reception area of an office (i.e., into that area of the office into which customers and others are customarily received) based only on an employee's consent.

Because of these distinctions, we conclude that *Mathe*, *Leach*, and *Walker* do not control here. The question here is whether one of two cohabitants can validly admit an officer into their living room (i.e., into that area of their house in

---

[30] *Walker*, 136 Wn.2d at 685-86; *Cantrell*, 124 Wn.2d at 188-89; *Leach*, 113 Wn.2d at 739; *Mathe*, 102 Wn.2d at 543.

which either, with or without the other being present, would customarily receive a visitor). The question in *Mathe* and *Walker* was whether one of two cohabitants can validly admit an officer into their bedroom (i.e., into an area of their house in which neither would customarily receive a visitor). The question in *Leach* was whether an employee can admit an officer into the rear portions of an office (as opposed to the front reception area) when the employer is present and neither consents nor objects.

Because *Mathe*, *Leach*, and *Walker* do not control, we revert to *Matlock's* basic idea of assumption of risk: Does one cohabitant of a home assume the risk that an officer will enter that part of the home customarily used to receive guests (e.g., the living room), based only on the consent of a different cohabitant? The answer is yes in our view. It is common and customary for one cohabitant to admit guests into the living room area of a home when another cohabitant is present and not objecting; and because that is common and customary, it is fair to infer, at least in the absence of unusual circumstances, that the other cohabitant "assumes the risk" of that occurring. This is true, moreover, even when the other cohabitant does *not* assume the risk that the one cohabitant will admit an officer to parts of the home (or office) that are *not* customarily used to receive visitors.

Applying this conclusion here, we hold that Hoggatt assumed the risk that Clark, his cohabitant, would allow Stair to enter their living room area without his consent or participation. Accordingly, Hoggatt was bound by Clark's voluntary consent to Stair's entry, and Stair was acting lawfully when he stepped across the threshold and into the living room area.

## II

The next question is whether Stair lawfully approached Hoggatt, arrested him, and seized the gun. The answer turns on plain view.

■ Plain view really involves three stages: *viewing*, *reaching* and *seizing*. (1) The officer must *view* the item to be seized without intruding unlawfully on the defendant's privacy.[31] (2) The officer must *reach* the item without intruding unlawfully on the defendant's privacy.[32] (3) The officer must *seize* the item (a) without intruding unlawfully on the defendant's privacy (as opposed to the defendant's possession),[33] and (b) with probable cause to believe the item is contraband or evidence of a crime.[34] The officer does

---

[31] At the viewing stage, the officer may or may not be intruding on privacy. *E.g.*, *State v. Bobic*, 140 Wn.2d 250, 258, 996 P.2d 610 (2000); *State v. Dyreson*, 104 Wn. App. 703, 709-10, 17 P.3d 668 (2001). If the officer is not intruding on privacy, the situation is called "open view." *E.g.*, *Dyreson*, 104 Wn. App. at 709; *Lemus*, 103 Wn. App. at 102; *State v. Dykstra*, 84 Wn. App. 186, 191, 926 P.2d 929 (1996). If the officer is intruding on privacy, the situation is called "plain view," *e.g.*, *State v. Myers*, 117 Wn.2d 332, 346, 815 P.2d 761 (1991), *Lemus*, 103 Wn. App. at 102, and the officer must have "prior justification for the intrusion." *See also Bustamante-Davila*, 138 Wn.2d at 982; *State v. Gocken*, 71 Wn. App. 267, 278, 857 P.2d 1074 (1993), *review denied*, 123 Wn.2d 1024 (1994); *State v. Rodriguez*, 65 Wn. App. 409, 416, 828 P.2d 636, *review denied*, 119 Wn.2d 1019 (1992).

[32] This means, among other things, that when an officer is intruding on a reasonable expectation of privacy, the officer must not exceed the scope of the warrant, consent, or other source of authority under which he or she acts. *E.g.*, *Bustamante-Davila*, 138 Wn.2d at 983-84; *State v. Murray*, 84 Wn.2d 527, 534, 527 P.2d 1303 (1974), *cert. denied*, 421 U.S. 1004 (1975); *Johnson*, 104 Wn. App. at 501; *State v. King*, 89 Wn. App. 612, 617, 949 P.2d 856 (1998); *State v. Watkins*, 76 Wn. App. 726, 730-31, 887 P.2d 492 (1995). It used to be said that the officer must "inadvertently discover" the incriminating evidence. *E.g.*, *Coolidge*, 403 U.S. at 466; *State v. Dimmer*, 7 Wn. App. 31, 33, 497 P.2d 613, *review denied*, 81 Wn.2d 1003 (1972). That idea, however, has since been discredited, or at least refined, by both federal and state courts. *E.g.*, *Horton v. California*, 496 U.S. 128, 130, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990); *State v. Hudson*, 124 Wn.2d 107, 114 n.1, 874 P.2d 160 (1994); *State v. Fowler*, 76 Wn. App. 168, 173, 883 P.2d 338 (1994), *review denied*, 126 Wn.2d 1009 (1995); *State v. Graffius*, 74 Wn. App. 23, 30 n.2, 871 P.2d 1115 (1994); *State v. Goodin*, 67 Wn. App. 623, 627, 838 P.2d 135 (1992), *review denied*, 121 Wn.2d 1019 (1993); *State v. Wright*, 61 Wn. App. 819, 824 n.7, 810 P.2d 935, *review denied*, 117 Wn.2d 1012 (1991). Yet the idea seems to persist in cases where it makes no difference. *E.g.*, *Bustamante-Davila*, 138 Wn.2d at 982; *Myers*, 117 Wn.2d at 346-47; *Gocken*, 71 Wn. App. at 276-78; *Rodriguez*, 65 Wn. App. at 416.

[33] *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993); *Arizona v. Hicks*, 480 U.S. 321, 326, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987); *Bustamante-Davila*, 138 Wn.2d at 982-83; *Hudson*, 124 Wn.2d at 114; *Myers*, 117 Wn.2d at 346-47; *Murray*, 84 Wn.2d at 534; *Johnson*, 104 Wn. App. at 501; *State v. O'Neill*, 104 Wn. App. 850, 861, 866, 17 P.3d 682 (2001); *Lemus*, 103 Wn. App. at 102; *Watkins*, 76 Wn. App. at 731.

[34] *Dickerson*, 508 U.S. at 375; *Myers*, 117 Wn.2d at 346-47; *State v. Lair*, 95 Wn.2d 706, 716, 630 P.2d 427 (1981); *Johnson*, 104 Wn. App. at 501; *O'Neill*, 104 Wn. App. at 865-66.

not need a warrant for the item if these requirements are met.[35]

■ The first requirement is met here. Stair saw Hoggatt from the porch, and he saw the gun as he stepped over the threshold after receiving Clark's consent.[36]

The second requirement is met here. Clark consented to Stair's entry into the living room area into which guests would ordinarily be received. Hoggatt had assumed the risk that she would do that. The living room area effectively included the kitchen in which Hoggatt was standing; the house was small, and neither room was separated from the other.[37] Once in the living room, Stair walked the few feet to Hoggatt without committing any additional intrusion on privacy, and without exceeding the scope of Clark's consent.[38] Indeed, Clark had gestured to Hoggatt as she admitted Stair into the living room.

The third requirement is met here. Stair had probable cause to seize Hoggatt and the gun before he went to the house, and thus probable cause to seize both after he was in the house. We conclude that Stair seized Hoggatt and the gun lawfully, and that the trial court properly denied Hoggatt's motion to suppress.

---

[35] *Dickerson*, 508 U.S. at 375; *Hudson*, 124 Wn.2d at 114; *Myers*, 117 Wn.2d at 346; *Johnson*, 104 Wn. App. at 501; *O'Neill*, 104 Wn. App. at 860-61; *Lemus*, 103 Wn. App. at 102.

[36] Stair testified that he "saw the firearm as [he] stepped up onto the doorway." RP (July 27, 1999) at 14.

[37] Stair testified that "[i]f you step into the living area—it's the living room and the kitchen right together. It's all one room." *Id.*

[38] *See Bustamante-Davila*, 138 Wn.2d at 969 (officers in defendant's living room with his consent lawfully observed, reached, and seized a "rifle standing against the west living room wall"); *Lair*, 95 Wn.2d at 708, 719 (officers may seize contraband discovered while executing a search warrant for marijuana); *King*, 89 Wn. App. at 618-22 (officers executing consent search may briefly detain person and seize gun unexpectedly discovered during search); *Rodriguez*, 65 Wn. App. at 413, 416 (officers in apartment with occupant's consent lawfully observed, reached and seized items on dining room table "about 10 feet from the entrance door"). *Cf. Gocken*, 71 Wn. App. at 277 (officers lawfully inside the condominium to perform "health and safety check" lawfully observed and reached tape around bathroom door).

The convictions are affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SEINFELD and BRIDGEWATER, JJ., concur.